**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

JESSICA JONES,                    )
      Plaintiff,                      )
                                  )
v.                                )          CIVIL ACTION: 2:20-00613-KD-B
                                  )
WIRELESS TIME OF ALABAMA, LLC,    )
      Defendant.                     )

**ORDER**

This matter is before the Court on the Defendant's motion for summary judgment (Doc. 14), Plaintiff's Response (Doc. 16), and Defendant's Reply (Doc. 17).

**I.    Findings of Fact**[1]

This litigation stems from Plaintiff Jessica Jones (Jones)' employment with Defendant Wireless Time of Alabama, Inc. (Wireless Time).  In sum, Jones alleges that Wireless Time discriminated against her and retaliated against her when, due to her status as a pregnant female, Wireless Time refused to hold open her position as Store Manager while she was on maternity leave and demoted her to a Sales Expert when she returned.  Jones alleges further that Wireless Time violated the FMLA when it denied her leave under same and/or retaliated against her for attempting to engage in her FMLA rights.

In January 2017, Jones began employment with Wireless Time as a Store Manager at its Selma, Alabama store.  (Doc. 16-1 at 1 (Decltn. Jones); Doc. 14-1 at 2 (Decltn. Stewart)).  As

---

1 The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

Store Manager, Jones received a salary and was entitled to receive monthly individual sales commissions and store commissions (bonuses) that were typically in the range of $1,000-2,000 per month.  (Doc. 16-1 at 3 (Decltn. Jones); Doc. 16-2 (pay stub)).

Wireless Time's Employment Handbook in effect at the time (1/22/16 revised) provides, in Section 5.6, an employee may be granted FMLA and may be placed in her same position/equivalent upon return:

### 5.6 FAMILY MEDICAL LEAVE ACT (FMLA)

Up to 12 weeks of leave, Family Medical Leave of Absence, may be granted in any 12-month period. Family Medical Leave of Absence may be taken for one or more of the following:

• Placement of a child with the employee for adoption or foster care;
• To care for a spouse, child or parent with a serious health condition.
• To take medical leave when an employee is unable to work due to a serious health condition.

Extended maternity leaves that are not medically required will be considered personal leaves of absence.

The Company cannot guarantee placement within the same position at the conclusion of a Family or Medical leave of absence. While every effort will be made to reinstate an employee into their original position, the employee may be placed in an equivalent position upon their return.

Employees who elect not to accept an alternative position after return from a leave of absence will be terminated. However, they will be eligible for rehire if their original position becomes available at a later date.

Engaging in gainful employment during a leave of absence will be considered a voluntary resignation.

(Doc. 1-5 at 3-4 (Wireless Time Employee Handbook Revised 1/22/2016)).[2]

---

2 Wireless Times submits a June 29, 2021 (revised date) version of its Handbook, but such is irrelevant to this case.  (Doc. 14-6).  And while Jones references the 2021 Handbook in her opposition (Doc. 16 at 5, 8) in response to Wireless Times' arguments relying on same, the only pertinent Handbook is the one in effect at the time of Jones' employment and of which she had knowledge (referenced by Jones as the

In August 2018, Jones learned she was having a high-risk pregnancy. (Doc. 1 at 4). In December 2018, Jones notified Wireless Time of her pregnancy and requested FMLA leave by speaking with her District Manager Jamar Stanford (Stanford) and the Human Resource Manager Rusty Harless (Harless). (Doc. 1 at 4; Doc. 16-1 at 1-2 (Decltn. Jones)). Specifically, Jones requested leave due to having a high-risk pregnancy for which bed rest had been ordered by her physician, and for maternity leave. (Doc. 16-1 at 1 (Decltn. Jones)).

In response, Wireless Time told Jones that FMLA was not available to her because the company was under the employee threshold for the FMLA to apply, but that she could take an unpaid leave of absence. (Id. at 1-2 (Decltn. Jones)). Jones agrees that Wireless Time informed her that the company did not offer FLMA leave, but states that for the entire time she was employed "it was my understanding" that FLMA leave was offered to the employees. (Id. at 2 (Decltn. Jones)). Sanford told Jones that her job was safe and he would hold her Store Manager position open for six (6) weeks. (Id. at 2 (Decltn. Jones)).

On March 13, 2019, Jones "told my employer that I would have to be off because my doctor ordered that I be on bed rest for the remainder of my pregnancy[,]" and began unpaid leave. (Id. at 2 (Decltn. Jones)). On March 18, 2019, Jones gave birth to her son. (Id.) On March 22, 2019,

While on leave, Jones called Sanford weekly about her position and returning to work. (Doc. 16-3 at 2 (email)). Then, per Jones, on March 22, 2019, she contacted Stanford about an employee coming in as the new Selma Store Manager. Stanford told Jones that someone would be working in her position temporarily, for six (6) weeks, until Jones returned from leave. (Doc. 16-3 at 2 (email)). At some point, Jones contacted HR and asked about the process for her to return

Handbook submitted with her Complaint dated January 22, 2016 (revised date)).

3

to work and she was told to obtain a doctor's release with no limitation. Per Jones, when she contacted HR while on leave, "she was notified by HR that my position was taken and that I could return to work and that I was notified before I left for leave that I would return as a sales rep[.] I was never notified before I spoke with HR about this matter."  (Doc. 16-3 at 2) (email)).

On April 15, 2019, Jones returned to work "in reliance on ... Sanford's statement that my job ... would be held for six weeks[,]" but was told her position was filled and she would return as a part-time Sales Expert instead and was asked to train the person hired to replace her as Store Manager (a non-pregnant female).  (Doc. 16-1 at 3 (Decltn. Jones)).  As a part-time Sales Expert, Jones received less pay (no longer a salary but an hourly wage) and was no longer eligible for monthly store commissions (bonuses).  (Id. at 3 (Decltn. Jones)).

On April 18, 2019, Jones contacted Wireless Time's Director Clay Beagle (Beagle) via email, to notify him of her dissatisfaction about being demoted from Store Manager to Sales Expert.  (Id.; Doc. 16-3 (email)).  On April 23, 2019, Beagle responded via email, and told Jones that after speaking with management and HR, "we have decided to stick with the current position we offered you after returning from leave[]" and apologized about any miscommunication about her position.  (Id.)  Jones remained in the part-time Sales position until May 13, 2019, at which time "[d]ue to the substantial reduction in pay, as well as the new Store Manager's hostility toward me in my efforts to work with her and help her learn the job, I was forced to quit my job[.]"  (Doc. 16-1 at 4 (Decltn. Jones)).

On August 7, 2019, Jones filed an EEOC Charge of Discrimination against Wireless Time for retaliation, sex discrimination, disability discrimination, and pregnancy discrimination -- as a continuing action with the latest discrimination occurring on May 13, 2019.  (Doc. 1-3). Per Jones,

she was constructively discharged on that date due to her demotion, loss of income, retaliation, and harassment at Wireless Time.

On December 30, 2020, Jones initiated this employment discrimination and retaliation case asserting the following claims against Wireless Time: 1) Count One (ADA discrimination)-- Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*. (a temporary disability due to her pregnancy);[3] 2) Count Two (gender discrimination) -- the Pregnancy Discrimination Act of 1978 (PDA) 42 U.S.C. § 2000e(k) and Title VII of the Civil Rights of Act of 1964 (Title VII), 42 U.S.C. § 2000 *et seq*.; 3) Count Three (Title VII retaliation); 4) Count Four (ADA retaliation); 5) Count Five (FMLA interference) -- the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*.; and 6) Count Six (FMLA retaliation).  (Doc. 1).

## II.    <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

***(c) Procedures***
***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

3 The ADA was amended by the ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110-325, 122 Stat. 3353 (2008).

***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

To succeed, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. Jean–Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. Id. Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); see also Fed. R. Civ. P. 56 Adv. Cmte. Note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish -- with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. Celotex, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving

6

party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell

v. Valley Forge Dental Assoc., 276 F.3d 1275, 1279 (11th Cir. 2001).

**III.   Conclusions of Law**

**A.  FMLA: Interference & Retaliation**

Jones asserts FMLA interference and retaliation claims against Wireless Time.  Wireless

Time moves for summary judgment on both of Jones' FMLA claims.

As summarized in Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239

F.3d 1199, 1206 (11th Cir. 2001):

> Among the substantive rights granted by the FMLA to eligible employees are the
> rights to "12 workweeks of leave during any 12–month period .... [b]ecause of a
> serious health condition that makes the employee unable to perform the functions
> of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following
> leave "to be restored by the employer to the position of employment held by the
> employee when the leave commenced" or to an equivalent position, 29 U.S.C. §
> 2614(a)(1). To preserve the availability of these rights, and to enforce them, the
> FMLA creates two types of claims: interference claims, in which an employee
> asserts that his employer denied or otherwise interfered with his substantive rights
> under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an
> employee asserts that his employer discriminated against him because he engaged
> in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. §
> 825.220(c) ("An employer is prohibited from discriminating against employees ...
> who have used FMLA leave.").

To be eligible, however, an employee must meet certain criteria and must work for a "covered

employer" within the meaning of the FMLA:

> **2) Eligible employee**
>
> > **(A) In general**
> > The term "eligible employee" means an employee who has been employed-
> > > **(i)** for at least 12 months by the employer with respect to whom
> > > leave is requested under section 2612 of this title; and
> > > **(ii)** for at least 1,250 hours of service with such employer during the
> > > previous 12-month period.

**(B) Exclusions**
The term "eligible employee" does not include--
> **(i)** any Federal officer or employee covered under subchapter V of chapter 63 of Title 5; or
> **(ii)** any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.

29 U.S.C. § 2611(2)(A)-(B). Additionally, the FMLA's "employer" definition includes the following: "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). As such, "the term 'eligible employee' does not include ... any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii) (FMLA Exclusions).

The Eleventh Circuit has repeatedly held that to bring a claim of FMLA interference or retaliation claim, an employee is "require[d] ... to establish that he [or she] qualified for FMLA leave[]" (*i.e.*, is FMLA eligible). Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166-1167 (11th Cir. 2014). This is accordingly a *threshold* burden for a plaintiff's prima facie case -- for either claim -- and if not satisfied, a plaintiff's FMLA claims fail as a matter of law. See, e.g., Morrison v. Amway Corp., 323 F.3d 920, 927 (11th Cir. 2003) ("[E]ligible-employee status under the FMLA is a threshold jurisdictional question ... that also appears to be a prima facie element for recovery in a civil action[.]") (internal citation omitted). See also e.g., Porcillo v. Vistar Corp., 2010 WL 427534, *5 (M.D. Fla. Feb. 1, 2010) (explaining the threshold eligibility requirement); Hegre v. Alberto–Culver USA, Inc., 485 F. Supp. 2d 1367, 1376 and note 6 (S.D. Ga. 2007) (same); Moore

8

v. Sears Roebuck & Co., 2007 WL 1950405, *5 (N.D. Fla. July 2, 2007) (collecting cases) ("[i]t is well-settled within and outside the Eleventh Circuit that an interference claim cannot be sustained if the employee was not eligible for leave under the FMLA in the first place[]"); Morehardt v. Spirit Airlines, Inc., 174 F. Supp. 2d 1272, 1278-1281 (M.D. Fla. 2001) (same).

On summary judgment, Wireless Time submits an affidavit from its CFO Adam Stewart (Stewart) stating that the company did not have more than 50 employees for the requisite 20 weeks for each calendar year within 75 miles of the location where Jones worked, Selma, Alabama, and in fact, never had such for any week during 2018 or 2019 when Jones was employed (including all of its stores within 75 miles -- Montgomery (2), Prattville, and Wetumpka). (Doc. 14-1). The Affidavit is also supplemented with Wireless Time's employee records. (Id.) In response, Jones fails to submit any evidence to support a contrary conclusion. Jones does not even dispute Wireless Time's status -- that it does not satisfy the employee worksite requirement for FMLA applicability. Based on the evidence before the Court on summary judgment, Wireless Time is not an employer subject to the FMLA and Jones is not an eligible employee under the FMLA. Jones' failure to satisfy the threshold requirement is fatal to her FLMA claims as a matter of law. Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1254, 1258 (11th Cir. 2004) (affirming the district court's entry of summary judgment for an employer as the employee failed to establish the worksite requirement).

However, in response to Wireless Time's motion, Jones argues that Wireless Time is equitably estopped from challenging her FMLA protections because the company offers FMLA to its employees per the Handbook and she "understood" and "detrimentally relied" on same:

> During her employment with Defendant it was Plaintiff's understanding that Defendant offered FMLA leave to its employees ... If Plaintiff had known that

9

there was no FMLA leave available to her as an employee and that her job as a store manager was at risk and was not protected by FMLA if she had to take time off due to pregnancy, she would likely have reconsidered pregnancy at that time or would have explored other employment with a company that did offer FMLA leave to its employees ... Plaintiff proceeded with trying to have another child in reliance on Wireless Time's having FMLA benefits available to her as referenced in its Employee Handbook ... At no point prior to her requesting FMLA leave was it communicated to her that she was not eligible or that Wireless Time would not offer FMLA leave to her.

(Doc. 16 at 1-2, 6; Doc. 1).  Per Jones, "there are questions of fact relating to the elements of equitable estoppel that a reasonable jury could decide in favor of the Plaintiff."  (Doc. 16).  Specifically, Wireless Time's discussion of the FMLA in the Handbook is a misrepresentation of material fact such that it should be equitably estopped from denying FMLA coverage.  (Id. at 8).

In response, Wireless Time argues that "Plaintiff apparently contends that the reference to "Family Medical Leave" [in the Handbook] is a reference to the FMLA. This is clearly not true."  (Doc. 14 at 5).  Wireless Time is apparently arguing that Section 5.6 of the Employee Handbook – the Handbook in effect at the time of Jones' employment -- does not reference the FMLA but, rather, some sort of non-FMLA family medical leave.  However, Section 5.6 of the Handbook is specifically named, and sets forth in bold lettering, "**5.6 FAMILY MEDICAL LEAVE ACT (FMLA).**"  (Doc. 1-5 at § 5.6).

Regardless, as acknowledged by Jones, the Eleventh Circuit has twice declined to decide whether the doctrine of equitable estoppel applies to FMLA coverage and to date, has not applied the equitable estoppel doctrine to the FMLA.  See, e.g., Cowman v. Northland Hearing Ctrs., Inc., 628 Fed. Appx. 669, 672 (11th Cir. 2015) ("[w]e have not determined whether the doctrine of equitable estoppel applies as a matter of federal common law in the FMLA context[]"); Dawkins v. Fulton Cty. Gov't, 733 F.3d 1084, 1089 (11th Cir. 2013) (finding it unnecessary to decide

whether equitable estoppel applies as the plaintiff failed to establish the elements for same and did "not explain why we should create a federal common law equitably estoppel to extend FMLA coverage[]"); Kuczynski v. Lyra Mgt., Inc., 2009 WL 2488295, *3 (S.D. Fla. Aug. 13, 2009) ("Plaintiff argues that even if he is not an eligible employee under the FMLA, the Court should estop Defendant from raising the worksite requirement as a defense to Plaintiff's FMLA claim ... [while] Plaintiff ... satisfies the elements of equitable estoppel ... the Eleventh Circuit ... has never decided whether the doctrine of equitable estoppel may be applied to prevent a defendant from contesting whether a plaintiff is an eligible employee under the FMLA. Moreover, the undersigned has already decided that absent a directive from the Eleventh Circuit, this Court declines to apply the doctrine[]") (internal citation omitted); Peery v. CSB Behavioral Health Sys., 2008 WL 4425364, *13 (S.D. Ga. Sept. 30, 2008) ("[b]ased on this persuasive authority, this Court sees no reason to apply the doctrine here[]); Hegre, 2007 WL 1481896, *1 note 1 ("Initially, it should be noted that it is doubtful that the doctrine of equitable estoppel may be applied in FMLA cases[]"); Moore v. Sears Roebuck & Co., 2007 WL 1950405, *9 (N.D. Fla. Jul. 2, 2007) (declining to apply equitable estoppel to the FMLA).

Moreover, even if equitable estoppel were available, Jones cannot establish the requisite elements for such relief: 1) the party to be estopped misrepresented material facts; 2) the party to be estopped was aware of the true facts; 3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe that the party asserting the estoppel would rely on it; 4) the party asserting the doctrine did not know, nor should it have known, the true facts; and 5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. Dawkins, 733 F.3d at 1089.

At the outset, there is no evidence establishing a material misrepresentation by Wireless Time.  The evidence indicates that Wireless Time notified Jones in December 2018, before she went on leave, that she was <u>not</u> entitled to FMLA.  Indeed, Jones' Complaint alleges as follows:

> 18. In or around December 2018, Ms. Jones informed Wireless Time of her pregnancy and requested leave under the Family and Medical Leave Act ...
>
> 19. More specifically, Ms. Jones spoke with her district manager, Jamar Stanford ... and her Human Resource Manager, Rusty Harless .... about her high-risk pregnancy and need for leave as an accommodation.
>
> 20. Ms. Jones was informed that Wireless Time did not offer leave under the Family Medical Leave Act ...

(Doc. 1 at 4-5 at ¶¶18-20).  In opposition to summary judgment, Jones further acknowledges that the "Defendant informed ... [her] ... that it did not offer FMLA and that ... [she] ... would not get FMLA time off but that ... [she] ... could take a leave of absence."  (Doc. 16 at 1).  And on summary judgment, Wireless Time has established that the district manager informed Jones that the company did not offer leave under the FMLA because the company was under the employee threshold.  Jones has submitted no evidence indicating that Wireless Time made any representations to her about being eligible for FMLA when she went on leave.  And the evidence indicates -- and Jones admits -- that Wireless Time told her she was <u>not</u> covered under the FMLA such that the leave she would take would be an excused leave of absence only.

Nevertheless, in an attempt to establish a misrepresentation, Jones' equitable estoppel argument is based on the language of Section 5.6 in the Handbook.  Essentially that Jones *assumed* -- based on that language -- that she was automatically eligible for FMLA and that the Section 5.6 language is a material misrepresentation by Wireless Time.  In Jones' words, "it was Plaintiff's understanding that Defendant offered FMLA leave to its employees."  The Court is not persuaded.

Jones has not established that Section 5.6 constitutes a material misrepresentation by Wireless Time about her eligibility for FMLA.

Section 5.6 does not state that all employees are eligible, or that FMLA leave is automatic, only that employees _may_ be granted FMLA.  As detailed _supra_, the Handbook provides in "5.6 FAMILY MEDICAL LEAVE ACT (FMLA)" that "[u]p to 12 weeks of leave, Family Medical Leave of Absence, _may_ be granted in any 12-month period[.]"  (Doc. 1-5 at 3 (Wireless Time Employee Handbook Revised 1/22/2016) (emphasis added)). Moreover, case law indicates that Jones' argument is not viable, as a matter of law.  "Although the exact requirements may be somewhat confusing to an employee unfamiliar with the FMLA, it clearly indicates that an employee is not automatically eligible for FMLA leave ... the policy itself was not a misrepresentation and could not have lead Plaintiff to believe that she was automatically eligible for FMLA leave." Acosta v. Novamed Surgery Ctr. of Orlando, LLC, 2014 WL 12872623, *8 (M.D. Fla. Aug. 28, 2014).[4]  Further, Jones self-described equitably estoppel argument is rooted

---

4 See also Goode v. Heritage Hospice, Inc., 2012 WL 1038669, *4-5 (E.D. Ky. Mar. 26, 2012):

> ... Goode does not cite any affirmative statement or representation from Hospice that she was eligible for FMLA leave or that her particular requested leave would be FMLA-protected leave. ... Goode acknowledges that her leave was not classified as FMLA leave by Hospice ... Goode's argument that Hospice should be estopped from arguing that she is not an eligible employee under the FMLA is based on Hospice's employee handbook. The employee handbook cites the FMLA and explains Hospice's procedures and requirements for an employee to obtain family or medical leave ... The handbook does not mention that the FMLA applies only to employees employed at worksites with 50 or more employees. ... the handbook's citations and references to the FMLA are not specific or definite misrepresentations that Goode was eligible for FMLA leave or that any requests for leave would be granted under the FMLA. The handbook merely represents Hospice's general policy regarding leave ...

> ... [i]f Goode had asked Administration about the FMLA and requested FMLA leave and Hospice told her that she was eligible for FMLA leave or that her leave would be FMLA leave—then Hospice would have definitely misrepresented a

13

in her belief that Wireless Time "offered" its employees FMLA. "Offering" FLMA is not automatic

eligibility, and her belief still overlooks that the Handbook states only that FMLA "may" be

eligible.   As such, Wireless Time's motion for summary judgment on Jones' FMLA claims is

**GRANTED.**

B.   **ADA Discrimination and retaliation**

On summary judgment Jones argues that "being ordered to go on bed rest was a pregnancy-

related impairment that substantially limited major life activity for her."  She further argues that

---

> material fact. However, the employee handbook does not state that Hospice is an
> FMLA eligible employer or that Goode and employees similarly situated are
> FMLA eligible employees[]" ... the statements regarding the FMLA, although
> confusing, are not the kind of personalized misrepresentations or misstatements
> that have led courts to apply the doctrine of equitable estoppel when an employer
> otherwise correctly denies benefits under the FMLA[] ...

Moreover, *"Goode* stands for the common sense proposition that an employer's general explanation
of its FMLA policies and procedures, without more, does not amount to a definite representation
that all (or any particular) employees are eligible for FMLA leave." Tilley v. Kalamazoo Cty. Rd.
Com'n, 777 F.3d 303, 313 (6th Cir. 2015).  See also Becattini v. Lutronic Corp., 2021 WL 5822994,
*4 (E.D. Penn. Dec. 8, 2021) (footnote omitted):

> ... [the] employee handbook ... in effect at the time Becattini requested leave, states,
> "Employees who have been employed for at least 12 months prior to the start of
> the leave, have worked for a total of at least 1,250 hours during the 12 months and
> are eligible for other benefits may have a right to family and medical leaves. FMLA
> leaves are for up to 12 work weeks per year ... for eligible full-time employees."....
> This is not a misstatement, nor is it an admission by Lutronic that it is a covered
> employer under the FMLA. See Goode v. Heritage Hospice, Inc., ...2012 WL
> 1038669, at *4 (E.D. Ky. Mar. 26, 2012) ("[T]he handbook's citations and
> references to the FMLA are not specific or definite misrepresentations that [the
> plaintiff] was eligible for FMLA leave....") ... Rather, it is an accurate statement of
> the law: if Becattini worked the FMLA minimum number of hours and was
> employed for the minimum amount of time, he may have been eligible for FMLA
> (if Lutronic were a covered employer). See Budhun v. Reading Hosp. & Med.
> Corp., 765 F.3d 245, 252 n.2 (3d Cir. 2014) ("[I]n order to be entitled to benefits,
> an employee must be eligible for FMLA protections and leave, work for a covered
> employer, and provide sufficient notice.") Because Lutronic did not misrepresent
> its employees' eligibility under the FMLA, Becattini does not have a claim for
> equitable estoppel.

she was discriminated against due to her disability (pregnancy) by Wireless Time "drastically reducing her pay by demoting her from Store Manger to Sales Expert [which] rendered her working conditions intolerable to the point that she was compelled to resign." (Doc. 16 at 10, 12).[5]

The ADA protects a qualified individual from discrimination on the basis of disability in the terms, conditions, and privileges of employment, and prohibits an employer from discriminating against a qualified individual with a disability because of the individual's disability. 42 U.S.C. § 12112(a); United States Equal Employment Opportunity Comm'n v. St. Joseph's Hosp., Inc., 842 F.3d 1333, 1343 (11th Cir. 2016); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). Generally, to establish a prima facie claim for disability discrimination, a plaintiff must show that she: 1) is disabled; 2) is a qualified individual; and 3) was subjected to unlawful discrimination because of her disability. Hillburn v. Murata Elec. N.A., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999). See generally Thomas v. Cobb Cty. School District, 2021 WL 5098767 (11th Cir. Nov. 2, 2021). Generally, absent direct evidence of disability discrimination - - but with some exception (*e.g.*, reasonable accommodation cases under the ADA)[6] -- the Court applies the McDonnell Douglas[7] burden shifting framework under which a plaintiff must first establish a prima facie case of discrimination. Dulaney v. Miami-Dade Cty., 481 Fed. Appx. 486,

---

5 Any claim that her discrimination claim is based on having been regarded as disabled was not addressed by Jones and is deemed abandoned.

6 The burden shifting analysis of Title VII is "partially applicable." Everett v. Grady Mem. Hosp. Corp., 2016 WL 9651268, *31 (N.D. Ga. May 12, 2016) (citing Abram v. Fulton Cty. Govt., 598 Fed. Appx. 672, 676 (11th Cir. 2015); Nadler v. Harvey, 2007 WL 2404705, *9 (11th Cir. Aug. 24, 2007); Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007).

7 McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

489-90 (11th Cir. 2012); Palmer v. Albertson's LLC, 418 Fed. Appx. 885, 887 (11th Cir. 2011);

Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir. 2001).

As summarized in Mohammed v. Jacksonville Hospitalists, P.A., 2016 WL 10649216,

*21-22 (M.D. Fla. 2016), a plaintiff must first establish that she is disabled:

> .... The ADAAA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual...." 42 U.S.C. § 12102(1)(A)-(C) (emphasis added).

Jones alleges that because her pregnancy was considered high risk and she was ordered to

be on bed rest for five days, she had a disability and was protected by the ADA.  According to

Jones, on March 13, 2019 her doctor ordered her to bed rest for the remainder of her pregnancy.

Jones' son was born on March 18, 2019 and Jones returned to work on April 15, 2019.

"'[T]he mere existence of a physical impairment does not constitute a disability under the

ADA;' the statute requires that the physical impairment must also substantially limit a major life

activity."  May v. American Cast Iron Pipe Co., 2014 WL 1043440, *5 (N.D. Ala. March 17,

2014). Thus, even assuming that Jones had a pregnancy related impairment, Jones did not suffer

from a disability *unless* that impairment substantially limited a major life activity. 42 U.S.C. §

12102(1)(A); 29 C.F.R. § 1630.2(h)-(i). Specifically, "where a medical condition arises out of a

pregnancy and causes an impairment separate from the symptoms associated with a healthy

pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such

medical condition may fall within the ADA's definition of a disability." Mayorga v. Alorica, Inc.,

2012 WL 3043021, *5 (S.D. Fla. Jul. 25, 2012).  Whether the nature, duration, and severity of

pregnancy complications and symptoms qualify as a disability under the ADA -- and whether an

impairment substantially limits a major life activity -- is usually a question of fact that requires an

individualized assessment or determination.  See, e.g., Garrett v. Univ. Ala. at Birmingham Bd. of Trs., 507 F.3d 1306, 1311 (11th Cir. 2007) ("[e]ach claim of disability must be considered on a case-by-case basis. When the symptoms of an impairment vary widely from person to person, an individualized assessment of the effect of an impairment is particularly necessary[]").

The facts then, related to Jones' pregnancy, are key. Indeed, a plaintiff such as Jones alleging ADA disability discrimination due to pregnancy must present *sufficient* evidence to establish that she was disabled -- *i.e.*, that she had an impairment that substantially limits a major life activity. There are no such facts before the Court, only conclusory statements by Jones that her pregnancy was "high-risk" and that doctor-ordered bed rest was required.  Jones has failed to submit sufficient evidence on summary judgment in support of her allegations -- no medical records, no doctor's statements, no other descriptions of her pregnancy, no identification of any major life activities which were impaired, no allegation as to the nature, duration and/or severity of her pregnancy, etc.  Instead, Jones relies exclusively on her Declaration to then unilaterally and summarily argue that her pregnancy "substantially limited a major life activity."  (Doc. 16 at 10). Because Jones has submitted nothing in support of her allegations other than her personal assertions in her Declaration -- there insufficient evidence from which a reasonable jury could find that she had a disability and/or was substantially limited in a major life activity.  See, e.g., Selkow v. 7-Eleven, Inc., 2012 WL 2054872, *14 (M.D. Fla. Jun. 7, 2012) (plaintiff's pregnancy was not a disability because she did not claim or present any evidence of severe complications that arose, only that she experienced a weakened back which prevented her from heavy lifting at work and that her doctor ordered her to "take it easy" with lifting -- otherwise, "[p]laintiff has not supplied any further evidence regarding the nature, severity, or duration of her alleged disability[]"); Jeudy

v. Holder, 2011 WL 5361076, *1 (S.D. Fla. Nov. 7, 2011) (finding that the plaintiff's pregnancy was not a disability because even though she alleged "complications during her pregnancy -- specifically, pelvic pain from the presence of fibroids in her uterus[] that allegedly impaired her ability to walk or stand, such an impairment "was not of the nature, severity, or duration necessary to be considered substantially limiting" because the pain was not constant or ongoing but, rather, occurred "off and on" throughout the day and the plaintiff's doctor's note, which recommended only that she "should not repetitively climb stairs[]" merely established that the plaintiff "suffered from a diminished activity tolerance with respect to her ability to walk ... not enough to create a factual issue for a jury[]").  See also Selkow, 2012 WL 2054872 at *15 ("[a]ccording to her testimony, Plaintiff's impairment was caused solely by her pregnancy and manifested when she was five months pregnant ... Given that Plaintiff's pregnancy could not possibly last another six months from the time the impairment began, the Court concludes that Plaintiff's impairment was 'transitory' as defined by the ADA, and as such, she did not have a 'disability' under 42 U.S.C. § 12102(1)(C) as a matter of law[]").

Finally, case law indicates that even when a plaintiff is placed on bed rest due to pregnancy-related complications, the plaintiff must *still* establish that those complications constitute a disability under the ADA. See, e.g., Alger v. Prime Restaurant Mgt., LLC, 2016 WL 3741984, *8 (N.D. Ga. Jul. 13, 2016) (finding that a Magistrate Judge's conclusion that a plaintiff had failed to show she qualified for ADA protection due to pregnancy-related complications resulting in bed rest was not plain error).

Because Jones has failed to establish the first requisite element of her prima facie case -- a disability -- the Court need not address the remaining elements[8] and summary judgment is **GRANTED** in favor of Wireless Time on Jones' ADA claims.  See, e.g., Abbott v. Elwood Staffing Servs., Inc., 44 F. Supp. 3d 1125, 1166, 1166-1167 (N.D. Ala. July 31, 2014) (finding the evidence insufficient to establish that a plaintiff was disabled due to pregnancy as a result of any pregnancy related impairment and/or that any such impairment substantially limited a major life activity -- and granting summary judgment on the ADA claim based on same); Jeudy, 2011 WL 5361076 at *6 ("... Ms. Jeudy presents only minimal evidence as to how her alleged impairment affected her ability to walk, stand, or otherwise ambulate. All she offers in opposition to summary judgment is her own subjective testimony and the doctor's note described above, neither of which is significantly probative on the issue of substantial limitation. She does not address any impact her complications had on her daily life .... while Ms. Jeudy's pregnancy related complications may have caused pain and may have affected, to some degree, her ability to walk, stand, or otherwise ambulate, she has not produced sufficient evidence from which a jury could reasonably conclude that she was substantially limited ... Jeudy has failed to raise a genuine issue of material fact as to whether her pregnancy and its attendant complications amount to a disability, and her claims ... fail as a matter of law[]") (internal citation and footnote omitted).

Jones also claims she was retaliated against for opposing the alleged disability discrimination.  As explained in Alger v. Prime Rest. Mgmt., LLC, 2016 WL 3741984, *7 (N.D. Ga. Jul. 13, 2016):

> The ADA also provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful

---

8 The Court disagrees with Wireless' assessment that Jones could not establish an adverse employment action by showing she was demoted and paid less. See *infra*.

by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a claim under this provision, plaintiff must show that (1) she "engaged in conduct protected by the ADA," (2) she "was subjected to an adverse employment action at the time, or after the protected conduct took place," and (3) Defendant took the adverse employment action against Plaintiff "because of" her protected conduct. Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1158 (11th Cir. 2005) (quoting 3C Fed. Jury Prac. & Instr. § 172.24 (5th ed.) (internal quotation marks omitted)); see Lewis v. Guy, No. 2:12-cv-2250, 2013 WL 5289957, at *4 (N.D. Ala. Sept. 18, 2013).

Jones alleges she was retaliated against when she engaged in the <u>alleged</u> ADA protected conduct of requesting an accommodation (pre- and post-pregnancy leave) and then was denied the accommodation, demoted, and constructively discharged.  While Jones' retaliation claim appears to be questionable on the issue of whether she engaged in protected conduct before she was denied accommodation and demoted, Wireless Time has failed to even mention ADA retaliation in its brief.  So to the extent Wireless Time requests summary judgment on the ADA retaliation claim, such relief is **DENIED**.

### C.     <u>Title VII & PDA Discrimination</u>

Jones asserts sex/gender discrimination under Title VII and the PDA, alleging that Wireless Time discriminated against her due to her status as a pregnant female by refusing to accommodate her and demoting her upon her return to work (which she terms as constructive discharge).[9]  The accommodation requested was pre- and post-maternity leave and to hold her same position open until her return.  Wireless granted Jones request in part by granting her requested four (4) week leave.  Wireless did not grant Jones request to hold her same position open until her return.  Instead

---

9 Jones also alleges in her complaint that Wireless Time's "policy of placing pregnant women on unpaid leave is a blanket policy that treats women affected by pregnancy and/or related medical conditions differently for employment related purposes." (Doc. 1 at 10).  However, the evidence is that Jones requested leave and was not "placed" on leave.  Moreover, Jones has not addressed this claim in the response and the Court deems it abandoned.

Wireless hired another person to fill the position of Store Manager and upon Jones return from four weeks of leave assigned her to the position of Sales Expert.

The anti-discrimination provision of Title VII makes it unlawful for "an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII to clarify that discrimination "because of sex" includes discrimination because of "pregnancy, childbirth, or related medical condition" and mandates that women affected by such circumstances "shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). See also AT&T Corp. v. Hulteen, 556 U.S. 701, 705 (2009); Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983); Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000); Byrd v. Lakeshore Hosp., 30 F.3d 1380, 1382-1384 (11th Cir. 1994).

And as held by the Supreme Court in 2015, the focus of a PDA discrimination claim is whether "an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work." Young v. United Parcel Service, Inc., 135 S.Ct. 1338, 1344 (2015).  Where, as here, the plaintiff relies on circumstantial evidence[10] to

---

10   **Jones has attempted to submit direct evidence of discrimination through the alleged comments of her District Manager.  Per Jones, on April 12, 2019, Sanford made the comment "Don't get pregnant or you won't have a job" or "Don't get pregnant or you won't have a job."  Jones alleges that this comment was made to a co-worker and was overheard by her mother who happened to be in the store.  (Doc. 16-1 at 3 (Decltn. Jones); Doc. 16-3 at 2 (email)).  These statements would likely be admissible on summary judgment through a declaration by the individual who heard the agent of Wireless Time make the statement. Fed. R. Evid. 801(d)(2)(D).  However, through a declaration of Jones', who was not privy to the comments, they are hearsay and inadmissible.  Thus, the Court cannot consider the**

21

establish pregnancy discrimination, the Supreme Court instructs courts to use a slightly modified

version of the familiar <u>McDonnell Douglas</u> burden-shifting framework. <u>Durham</u>, 959 F.3d at 1285

(citing <u>Young</u>, *supra*).  As explained by the Eleventh Circuit in <u>Durham v. Rural/Metro Corp.</u>, 955

F.3d 1279, 1281, 1285-1286 (11th Cir. 2020), a case of "first impression as to how to implement

the [March 25, 2015 Supreme Court's] *Young* test[:]"

> In *Young*, the Supreme Court announced a new, modified *McDonnell Douglas*[5]
> burden-shifting framework to be used in PDA cases involving indirect evidence of
> disparate treatment. *Young,* 575 U.S. at 228.... Under that framework, a plaintiff
> may make out a prima facie case of discrimination by "showing actions taken by
> the employer from which one can infer, if such actions remain unexplained, that it
> is more likely than not that such actions were based on a discriminatory criterion
> illegal under" the Act. *Id.* The *prima-facie*-case burden the plaintiff bears is not an
> "onerous" one. *Id.* Rather, to establish a *prima facie* case of [accommodation]
> discrimination under the Act, a plaintiff must show only that (1) she is a member
> of the protected class; (2) she requested accommodation; (3) the employer refused
> her request; and (4) the employer nonetheless accommodated others "similar in
> their ability or inability to work." *Id*. at 229....
>
> After a plaintiff satisfies her *prima facie* burden, the employer may come forward
> with "legitimate, nondiscriminatory reasons" for denying the plaintiff's requested
> accommodation. *Id.* Normally, though, an employer cannot simply say "that it is
> more expensive or less convenient to add pregnant women to the category of those
> ('similar in their ability or inability to work') whom the employer accommodates,"
> since that reason alone would generally be "[in]consistent with the Act's basic
> objective." *Id.*
>
> If the employer presents an ostensible "legitimate, nondiscriminatory" reason for
> what it has done, the plaintiff then has the opportunity to attempt to demonstrate
> that the employer's stated reason is "in fact pretextual." *Id.* (internal quotation
> marks omitted). The Supreme Court has explained that a plaintiff does enough to
> survive summary judgment if she shows both that "the employer's policies impose
> a significant burden on pregnant workers" and that "the employer's 'legitimate,
> nondiscriminatory' reasons are not sufficiently strong to justify the burden, but
> rather—when considered along with the burden imposed—give rise to an inference
> of intentional discrimination." *Id.*
>
> ***

--------

**comments.**

We have explained that *Young*'s analysis of the *prima facie* case's fourth prong means that, in contrast to Title VII's more general comparator analysis, "the comparator analysis under the PDA focuses on a single criterion—one's ability to do the job." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1228 n.14 (11th Cir. 2019) (en banc).

In its motion for summary judgment, Wireless Time does not contest that Jones was a protected person, that she requested accommodation or that the requested accommodation was denied. But the failure to hold her position open and instead assigning her to a lesser paying job is only actionable if Jones was treated differently because of her pregnancy. Wireless contends that Jones is unable to meet this burden.

Post-Young, the fourth element requires Jones establish that Wireless Time treated non-pregnant similarly situated individual in their ability to work more favorably. The *entirety* of Jones evidentiary support for the fourth element of her prima facie case is set forth in her Declaration. In her Declaration, Jones states a male district manager quit Wireless Time but was rehired later to his same position and was made the Store Manager of two stores (De'Andre Love); a non-pregnant female Prattville Store Manager quit her job due to stress, but was rehired a very short time later as the Store Manager (Jamia Jones); and a non-pregnant female Dothan Store manager quit but was later re-hired as a Store Manager. (Doc. 16-1 at 4 (Decltn. Jones)). Per Jones, "Plaintiff, unlike Mr. Love, Ms. Jones or the Store Manager for Defendant's Dothan location had to take time off due to a high-risk pregnancy and the birth of her son, came back and was not allowed to return as a Store Manager, but was demoted with a significant pay cut to Sales Expert[.]" (Doc. 16 at 15).

Jones' "evidence" of similarly situated employees fails for two reasons. First, her declaration is not admissible evidence as there is no support for her conclusory assertions of fact

Fed. R. Civ. P. 56(c)(4) (requiring affidavits to "set out *facts* that would be admissible in evidence" (emphasis added)); Cornelius v. Home Comings Fin. Network, Inc., 293 Fed. Appx 723, 728 (11th Cir.2008) (per curiam) ("To have any probative value, affidavits must be supported by specific facts, not conclusory allegations[]"); Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[C]onclusory allegations without specific supporting facts have no probative value[]"); Story v. Sunshine Foliage World, Inc., 120 F.Supp.2d 1027, 1030 (M.D. Fla. 2000) (an affidavit is not appropriate for summary judgment "when it is a conclusory argument rather than a statement of fact[]"). And only factual allegations in sworn testimony based on personal knowledge can defeat summary judgment; conclusory allegations cannot. Stein, 881 F.3d at 857 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

Second, even if supported by evidence, it is clear that the employee situations described by Jones (each quit and was later rehired as Store Manager) are not similar to her situation.  There is no evidence that the jobs were held open for these employees.  The only reasonable implication from the scenarios described by Jones is that after the employees quit, they reapplied to open positions and were hired.

In a variation on her failure to accommodate claim, Jones also asserts that she was discriminated against due to her pregnancy when she was demoted and replaced by a non-pregnant employee.  Jones may establish a prima facie case by showing: 1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) her employer treated her less favorably than someone outside her protected class. Rice–Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-843 (11th Cir. 2000).  Having already rejected Jones' alleged comparator evidence, Jones can still prevail on the fourth element by showing that she was

replaced by someone outside her protected class. McCarley v. City of Northport, 240 F. Supp. 3d 1242, 1246 (N.D. Ala. 2017) ("Alternatively, with respect to the fourth prong, a plaintiff may demonstrate that she was replaced by someone outside her protected class[]")

Wireless Time does not contest that Jones was in a protected class, that she was qualified for her position or that she was replaced by a person outside the protected class.  Instead Wireless Time initially defends this claim by arguing that Jones cannot prove her case because she cannot show she suffered any adverse employment action, *i.e.*, her demotion to Sales Expert was accompanied by only a de minimis cut in pay and she was not constructively discharged.[11]

An employment action is "adverse" if it results in "a *serious and material* change in the terms, condition, or privileges of employment[.]" Howard v. Walgreen Co., 605 F.3d 1239, 1245 (11th Cir. 2010).  An adverse employment action under 42 U.S.C. § 2000e–2(a)(1) "obviously encompasses "employment decisions that have direct economic consequences, such as termination, demotion, and pay cuts." Vance v. Ball State Univ., ___ U.S. ___, ___, 133 S.Ct. 2434, 2440 (2013). See also Edwards v. National Vision Inc., 568 Fed. Appx. 854, 862 (11th Cir. 2014) (evidence that a plaintiff was materially and adversely affected can be shown by a decrease in salary); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (an "adverse employment action" includes "termination, failure to hire, or demotion[]"); Hinson v. Clinch Cty., Ga. Bd. of Ed., 231 F.3d 821, 828-829 (11th Cir. 2000) (a transfer can also be adverse if it involves a significant reduction in pay).

In response to Wireless Time's argument, Jones contends that the difference was tantamount to "a drastic pay cut[]" and the job reassignment was permanent (*i.e.*, there is no

---

11 The Court agrees that Jones has not presented sufficient evidence to establish a constructive discharge.

evidence that Wireless Time temporarily reassigned her duties to prepare for her extended leave). Per Jones, she was demoted, and her demotion was accompanied by a significant pay cut -- from earning approximately $1-2,000 in Store Manager bonuses each paycheck, plus her salary, to being paid approximately $10/hour with no bonuses.  (Id.)  In support, Jones submits two (2) pay stubs -- one before and one after her leave -- reflecting the differences in pay between the Store Manager and Sales Expert positions.  (Doc. 16-2).  Moreover, Jones highlights that while she was a full-time salaried employee before taking leave, she was demoted to a part-time hourly wage employee upon her return to work.

The Court's review of the pay stubs reveal that Jones formerly received a salary as both a full time Store Manager ($923.08 per pay period) and a full time Sales Expert ($548.22 per pay period) -- plus a bonus per pay period.  (Doc. 16-2).  And when Jones returned to work after completing her leave, she only received pay as a hourly Sales Expert ($168), on a part-time basis, and no bonuses.  (Doc. 16-2).  The result is that Jones went from earning a minimum of $1,471.30 per pay period as a full-time salaried employee to (a potential maximum of) $168.00 per pay period as a part time hourly wage employee -- approximately an 88-89% pay cut -- *even when excluding any bonuses*.  Clearly, the change in positions (the demotion) with the accompany *drastic* change in pay and status (full time salaried to part time hourly) constitutes a materially adverse employment action -- a tangible, serious, and material effect on her employment. There is nothing *de minimis* about this.  Moreover, there is no evidence that the demotion was meant to be temporary.  As such, Jones has established an adverse action and a prima facie case of pregnancy discrimination.

The burden now shifts to Wireless to proffer a legitimate, non-discriminatory reason for replacing Jones as Store Manager while she was on leave.  To meet its burden, Wireless must articulate a reason "legally sufficient" to justify judgment in its favor and must support its articulated non-discriminatory reason "through the introduction of admissible evidence." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).  And "the defendant's explanation of its legitimate reasons must be clear and reasonably specific.... This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." Id. at 258 (internal quotes omitted).

Wireless Time states in its Reply that the "evidence presented by Defendant shows that Ms. Jones could not return to the position of store manager because that position was required to be filled based on Ms. Jones' leave."  (Doc. 17 at 7).  However, while this statement could be a legitimate, non-discriminatory reason if accompanied by specificity and admissible evidence, Wireless Time has provided neither.  There simply is no evidence in the record from any employee of Wireless Time that even states the position needed to be filled, much less why.  Thus, although the burden is "exceedingly light," Wireless has failed in their burden of production. Accordingly, Wireless Time's motion for summary judgment on Jones' Title VII/PDA is **DENIED.**

Jones has also claimed that she was retaliated against in violation of Title VII.  To establish a prima facie case of retaliation, a plaintiff must establish that: 1) she engaged in statutorily protected activity; 2) she suffered a materially adverse employment action; and 3) there was some causal connection between the two events. Dixon v. DTA Sec. Servs., 2021 WL 5320987, *3 (11th Cir. Nov. 16, 2021).

While Jones' retaliation claim appears to be questionable on the issue of whether she engaged in protected conduct before she was demoted, Wireless Time has failed to mention Title VII retaliation in its brief.  So to the extent Wireless Time requests summary judgment on the Title VII retaliation claim, such relief is **DENIED**.

IV.   <u>**Conclusion**</u>

Accordingly, it is **ORDERED** that the Defendant's motion for summary judgment (Doc. 14) is **GRANTED** as to Jones' FMLA interference and retaliation claims, **GRANTED** as to Jones' ADA claim, and **DENIED** as to Jones' Title VII/PDA pregnancy discrimination claim, ADA retaliation claim and Title VII/PDA retaliation claim.

**DONE** and **ORDERED** this the **10th** day of **February 2022.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

28